## J. J. Wilson v. McCormick Harvesting Machine Co.

1. SETTLEMENT—*When a Party is Not Estopped by.*—A manufacturing company appointed an agent to sell its product for cash or notes of the purchaser, and it was agreed that the agent, when making settlement with the company, should pay it in cash or turn over such notes, and that if the company found that any note taken and passed upon at the settlement was doubtful or worthless at the time of sale, such agent should take such note and replace it with cash or secured notes acceptable to the company. *Held:*

1. That the provision that the agent should take such note and replace it with cash or approved secured notes applied to notes accepted at the settlement, but afterward found by the company to have been worthless at the time of sale.

2. That in a suit by the company against such agent for the amount of a note accepted at such settlement, but afterward found to have been worthless at its date, it is no defense that at the settlement the officer acting for the company in the settlement pronounced the note good.

Assumpsit, on a contract of agency. Appeal from the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

Z. F. YOST, attorney for appellant.

A. C. NORTON and F. W. WINKLER, attorneys for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This was a suit by the McCormick Harvester Company

against J. J. Wilson, a former agent of the company at Pontiac, to recover, under the provisions of the contract between the parties, the principal and interest of a note turned over to the company by Wilson on a settlement. At the close of the evidence the court excluded defendant's proof, and instructed the jury to find for plaintiff and assess its damages at the face of the note, with interest thereon at five per cent from the date of said settlement. The jury returned a verdict for plaintiff for $69.29. Plaintiff remitted fifteen cents from the verdict. The court denied a motion by defendant for a new trial, and entered judgment for $69.14. Defendant appeals.

The contract between the parties appointed Wilson agent of the company for Pontiac and vicinity to sell harvesting machinery for the company. Wilson was authorized to sell for cash or for notes of the purchaser payable to the order of the company, taken on its blank forms. In settling with the company Wilson was to pay the company in cash or by turning over such notes. His compensation was a commission on the amount of said notes and cash. The contract, which was under seal, contained these provisions:

"In case the said McCormick Harvester Company or their authorized agent, find that any note taken and passed upon at settlement, was doubtful or worthless at the time of sale, then the said agent shall take the said note and replace it with cash or notes secured by good and responsible parties that shall be acceptable to said company or their general agent."

On August 18, 1897, J. C. Barber, as agent of the company, made a settlement with Wilson at Pontiac for the business of the preceding season, and in that settlement Wilson turned over a note of John A. Yeagley for $59.50, dated July 29, 1897, due on or before January 1, 1898, and bearing interest at six per cent per annum till due, and seven per cent thereafter till paid. It was payable to the company and was on their blank. By the written statement then furnished by Wilson, as required by the contract, this note was given for the purchase of a binder. In July or August, 1899, an attorney of the company presented the

Wilson v. McCormick Harvesting Machine Co.

note to Wilson and demanded in lieu thereof a new note with good security, or cash.   Wilson refused to do anything about it.   This suit was then brought.   The proof showed that Yeagley was a renter, having no visible property not exempt from execution at the date of the note or for several years before; that he was insolvent at the date of the note, and that he removed from the State in January, 1898, the month in which the note matured.   This proof made a case entitling plaintiff to the judgment rendered.

Defendant sought to prove that at the time Barber received the note from Wilson, he and a man who was assisting him made inquiry into the value of the bunch of notes tendered by Wilson and pronounced them good.   This did not constitute a defense.   The obvious meaning of the clause above quoted from the contract is that if the company or its authorized general agent found after the settlement that any note taken and passed upon at the settlement was doubtful or worthless at the time of the sale, then the agent should replace such note with cash or another well secured note.   The contract refers to notes passed upon and accepted as good at the settlement, but afterward found to have been doubtful or worthless when given.   No doubt the company was required to ascertain the value of the notes and to exercise this election within a reasonable time, in view of all the circumstances.   The delay from January 1, 1898, to July or August, 1899, was considerable, though it was probably due to Yeagley's removal from the State in January, 1898.   If defendant had shown that there had been a time after the maturity of the note when he could have collected it if it had been tendered to him, and that when it was presented to him in July or August, 1899, that condition had passed and he could no longer collect it, a case might have been presented requiring the jury to determine whether the delay of the company was reasonable or unreasonable.   But no such case was made.   So far as appears the note is as good now as it ever was.   If Wilson can collect it he will save the difference between the five per cent awarded against him under the instruction of the

court, and the higher interest the note bears. It does not appear the delay of the company in repudiating the note has harmed defendant.

It further appeared that Wilson did not sell Yeagley a binder or any other machinery of the company; that he sold Yeagley a buggy in August, 1896, and took a note for it; that afterward Wilson returned that note to him and at Wilson's request Yeagley signed the note in question, running to the McCormick Harvester Company, to enable Wilson to use it as he did in settling with the company. Wilson sought to show that Barber authorized him to do this, and that it was with Barber's consent and connivance that he returned the note as given on the sale of a binder. Barber denied all knowledge that the note had not been taken for a binder, till he ascertained that fact at a much later date. We think this proof was immaterial and did not tend to relieve Wilson from his contract obligation to replace the Yeagley note with cash or another well secured note, when the company ascertained it was doubtful or worthless at its date. When the settlement was over he either had in his hands a binder reported as sold, or he had previously sold a binder and retained the cash received for it. In either case he was not harmed and suffered no loss by the course pursued, whether justified or not by Barber's acts. Nothing was shown from which the jury could have found a defense had been established, relieving Wilson from his duty to replace the note. As plaintiff's proof made a case and no legal defense was attempted, defendant was not harmed by the rulings of the court. The judgment is affirmed.